UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
13-CR-174 (RHK/SER)

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **DEFENDANT'S POSITION WITH** |
| Plaintiff, | ) | **RESPECT TO SENTENCING FACTORS** |
| | ) | |
| v. | ) | |
| | ) | |
| Gabriel Orion Lowther, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## INTRODUCTION

Defendant Gabriel Lowther submits this memorandum in support of his sentencing position. First, Mr. Lowther objects to a 2-level increase under §2D1.1(b)(5) because the offense involved the importation of methamphetamine from Mexico as suggested in the PSR. We believe it is not within the spirit or the letter of the guidelines to add a 2-level increase on this basis given the lack of evidence the drugs were imported and that Mr. Lowther knew they were. Second, Mr. Lowther objects to a 2-level increase under §3B1.1(c) for being an organizer, leader, manager or supervisor within the conspiracy as suggested in the PSR. In reality, he was a courier and mid-level dealer. Mr. Lowther respectfully requests that the court find a total offense level of 34, with a criminal history category of VI, for an advisory guideline range of imprisonment of 262 to 327 months.

This does not end the discussion, however. As part of the plea agreement Mr. Lowther reserved the right to request a variance from the applicable guideline range in

line with this Court's discretion and responsibility to use all of the factors set forth in 18 U.S.C. §3553(a) "to impose a sentence sufficient, but not greater than necessary to comply with the basic aims of sentencing." *Rita v. United States*, 127 S.Ct. 2456, 2463 (2007). These basic aims include: the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment; to afford adequate deterrence; to protect the public from further crimes of the defendant; to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner; and to avoid unwarranted sentence disparities among similarly situated defendants. *See*, 18 U.S.C. §3553(a)(2) and (6).

Importantly, the Court must also consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See*, 18 U.S.C. §3553(a)(1). This is consistent with the basic notion that the sentencing judge is "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). *See also, Gall v .United States*, 128 S.Ct. 586, 602 (2007) (in addition to the guidelines, the "district court should. . . consider all of the §3553(a) factors to determine whether they support the sentence requested" by the individual defendant); *Kimbrough v. United States*, 128 S.Ct. 558, 577 (2007) (recent Supreme Court developments "mean that the district court is free to make its own

reasonable application of the §3553(a) factors, and to reject (after due consideration) the advice of the Guidelines.") (Scalia, J. concurring); *Rita*, 127 S. Ct. at 2465 (there is no presumption that the guideline range is reasonable or just under the circumstances); *Pepper v. United States*, 131 S.Ct. 1229, 1235 (2011) (Supreme Court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."). Considering both the guidelines and the §3553(a) factors, we believe a downward variance from the advisory guideline range to impose a sentence not to exceed 120 months is appropriate and in accordance with their aim.

## I. GUIDELINE PROVISIONS

**1. Importation of methamphetamine from Mexico - §2D1.1(b)(5)[1]**

Mr. Lowther never traveled to Mexico or had specific and actual knowledge that the methamphetamine he brought from Texas to Minnesota originated in Mexico. There was neither reference to Mexico in the Indictment nor the plea agreement, nor in Mr. Lowther's factual recitation to the Court during his guilty plea. Moreover, we do not believe the government could prove or be willing to prove that Mr. Lowther knew the

---

[1] §2D1.1(b)(5) says the offense level should be increased by 2 levels when "the offense involved the importation of…methamphetamine…or the manufacture of methamphetamine from the listed chemicals that the defendant knew were imported unlawfully," and the defendant is not subject to an adjustment for mitigating role.

3

methamphetamine was imported from Mexico.[2] Indeed, assigning a 2-level increase to Mr. Lowther would be tantamount to assigning a 2–level increase to any defendant associated with a conspiracy because ostensibly all cocaine and methamphetamine can be said to be imported from another country and therefore imputed to all defendants. Without more evidence that Mr. Lowther knew that the methamphetamine he transported and later dealt, originated in Mexico, a 2-level increase is not warranted. The fact that his co-defendants' plea agreements state that this was part of a larger conspiracy with players operating in Minnesota, Texas and Mexico, is not enough to justify an increase. *See, United States v. Rivera-Mendoza*, 682 F.3d 730, 733 (8th Cir. 2012)(government bears burden of proof by preponderance of evidence to show drugs were imported).

## 2. Organizer, leader, manager or supervisor - §3B1.1(c)[3]

As laid out further in the next section, Mr. Lowther took all of his direction from a currently unindicted co-conspirator, who made all arrangements for the pick-up, transfer and delivery of the methamphetamine Mr. Lowther transported from Texas, and later dealt to a few people in Minnesota. He was paid almost entirely for his efforts with free supplies of methamphetamine to feed his ever increasing addiction to the

---

[2] The government similarly objects to a 2-level increase on this basis, stating "[t]here is no evidence that Mr. Lowther was involved in bringing methamphetamine across the United States border, or even involved such machinations aside from receipt in Dallas, Texas." Government's response to preliminary pre-sentence report, dated November 21, 2013.
[3] Under §3B1.1(c), a 2- level increase to the offense level is warranted when a defendant "was an organizer, leader, manager, or supervisor" in the criminal activity.

4

drug, hardly the type of compensation or power associated with someone who leads, organizes, manages or supervises a criminal undertaking. He was really no more than a courier (albeit large scale) and a mid-level dealer.  He had very little say on the overall success or failure of the conspiracy.

## II.  18 U.S.C. §3553 FACTORS

1. **Nature and circumstances of the offense and the history and characteristics of the defendant.**

*The Offense*

Mr. Lowther's incursion into this conspiracy began in August of 2012 when he ran into an old acquaintance, and unindicted co-conspirator (OCC), at an Auto Zone store in Winona, Minnesota. The OCC asked Mr. Lowther whether he would be willing to help him sell a pound of marijuana and he agreed. Later that day, Mr. Lowther went to the home of the OCC where the OCC showed him two pounds of marijuana and a quantity of methamphetamine. Mr. Lowther eventually agreed to help the OCC sell methamphetamine as well.

In the fall of 2012, the OCC asked Mr. Lowther if he was willing to act as a courier, driving to Texas to deliver money and to pick up the meth and bring it back to Minnesota. Mr. Lowther agreed with the understanding he would be compensated for his efforts with copious amounts of the drug, mainly to use but also to sell to co-defendants Clancy Amy and Michael Schoenfelder.  Mr. Lowther ultimately made six trips to Texas to drop off money and to pick up methamphetamine for the OCC. Mr Lowther took his direction from the OCC, who set up all six transactions. Mr. Lowther dealt with one

individual on four of these trips and another individual on the other two trips. He never learned their names. Mr. Lowther was always accompanied by a licensed driver, and paid for gas and lodging with his own money. The six trips resulted in approximately twelve kilos of methamphetamine.

In February 2013, Mr. Lowther was arrested and began to cooperate with authorities.[4] He was arrested again in July, 2013 and brought to court to answer to a conspiracy indictment. On September 5, 2013, Mr. Lowther appeared before this Court and pled guilty to County I of the indictment, admitting that he conspired with others to distribute in excess of 500 grams of methamphetamine.

### *The Offender*

Mr. Lowther is thirty-seven years old. He has a relatively lengthy criminal history, consisting mainly of theft, drug and traffic offenses. He spent most of his life in southeastern Minnesota. His parents divorced when he was two years old, and his mother remarried two years later. He didn't have a relationship with his father until he was twelve years old, and hasn't had much of a relationship with his father since. He graduated from Houston (MN) high school in 1994. He has a fifteen year old daughter who he loves but unfortunately does not see very often.

Mr. Lowther's employment history has been spotty, with work in the construction trades, and beset with barriers erected due to his criminal record and missed opportunities spurred by drug use. He readily admits he has been abusing drugs and alcohol for the past

---

[4] Mr. Lowther anticipates the government will seek a downward departure under U.S.S.G. §5K1.1 for substantial assistance, which should also ultimately impact this court's sentence.

twenty years, with his heaviest use in the year leading up to his arrest. While incarcerated, he intends to be productive. He will use his time to obtain a college degree, to successfully complete a treatment program and to actively engage in any other prison programming that may assist him when he is released.

Mr. Lowther is a personable individual, and a realist. He is not violent and in fact exhibits kindness, respect and optimism. He accepts responsibility for his conduct and understands he must be held accountable for his actions. Despite his transgressions, or perhaps because of them, he has long been in a position to assist law enforcement and he has done so, even as he sits in the Sherburne County Jail awaiting to be sentenced.

He is not a young man anymore. He is tired of jails and prisons, regimens and restrictions, of living life on the edge. He desires stability and resolution. We strongly believe his renewed commitment to sobriety, his desire to lead a meaningful life, his non-violent nature, his cooperation and acceptance of responsibility, all support a downward variance from the advisory guideline range.

2. **Need for the sentence imposed, taking into account the seriousness of the offense, respect for the law, just punishment, public safety and adequate deterrence.**

It is always difficult of measure the degree to which an individual needs to be removed from society to satisfy the goals of public safety, rehabilitation, deterrence and just punishment. To be sure, someone who preys on others, inflicting pain and suffering, is a threat and a menace to society. Incarceration for these people serves to protect public safety. Mr. Lowther is not that person.

And what of deterrence? There have been a number of studies done on the deterrent effect of long term prison sentences.[5] While locking someone up for an extended period of time certainly has a specific deterrent effect for the individual who committed the crime, the vast body of research demonstrates the length of a sentence has little deterrent effect with the general population.

One article reviewing the body of literature on general deterrence, concluded:

> Can we conclude that variation in the severity of sentences would have differential (general) deterrent effects? Our reply is a resounding no. We could find no conclusive evidence that supports the hypothesis that harsher sentences reduce crime through the mechanism of general deterrence. Particularly given the significant body of literature from which this conclusion is based, the consistency of the findings over time and space, and the multiple measures and methods employed in the research concluded, we suggest that a stronger conclusion is warranted. More specifically, the null hypothesis that variation in sentence severity does not cause variation in crime rates should be conditionally accepted.
>
> * * * *
>
> Deterrence-based sentencing makes false promises to the community. As long as the public believes that crime can be deterred by legislatures or judges through harsh sentences, there is no need to consider other approaches to crime reduction.

*Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime and Justice at 187, 191.

Yet another study concluded:

> There is generally no significant association between perceptions of punishment levels and actual levels that [courts and correctional

---

[5] For example, Gary Kleck, et al., *The Missing Link in General Deterrence Research*, 43 Criminology 623 (2005); Anthony N. Dodds & Cheryl M. Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime and Justice 143 (2003).

> institutions] work hard to achieve, implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms. Increases in punishment might do so through incapacitative effects, the effects of treatment programs linked with punishment, or other mechanisms, but are not likely to do so in any way that depends on producing changes in perceptions of risk.

*The Missing Link in General Deterrence Research*, 43 Criminology at 653. Finally, University of Minnesota law professor Michael Tonry, who has published widely on modern penal policy and is considered an expert in this area, has said:

> In searching for ways to address rising crime rates in the final third of the twentieth century, American policy makers got lost in a forest of good intentions, public anxieties, and political cynicism. They created a punishment system that no one would knowingly have chosen, but that we do not know how to change. Current policies are too severe, waste lives and money, and often produce unjust results. They have produced an imprisonment rate five times higher than that of any other Western country and seven to twelve times higher than most.

Michael Tonry, *Thinking About Punishment: Penal Policy Across Space, Time and Discipline* 223 (2009). On the real-world question of whether increases in penalties significantly reduce the incidence of serious crimes, "the consensus conclusion of governmental advisory bodies in many countries is maybe, a little, at most, but probably not."[6]

Because there is no consistent and plausible evidence that harsher sentences deter crimes, deterrence as a policy goal in this case must not be overemphasized. Incapacitating Mr. Lowther will prevent him from committing further crimes while he is in custody but an advisory guideline prison sentence is not necessary to deter him

---

[6] Michael Tonry, *Sentencing Guidelines* 137 (Norval Morris, ed., 1996).

9

from future criminal behavior.  Indeed, one could safely say, on the effectiveness of *specific* deterrence, these past eight months have had a significant deterrent effect.  The aim of deterrence as it relates (unsatisfactorily) to the general public and (satisfactorily) to Mr. Lowther has been achieved. With commitment and hard work he will stay drug free.  He does not need a guideline sentence to protect the public or to deter him from future bad behavior or as just punishment for his misdeeds. All of that can be satisfied with a relatively shorter sentence.

Mr. Lowther has begun the arduous process of change, and has set goals for his future. He intends to complete a treatment program while incarcerated and to live a life without drugs. He knows this will take work and commitment and patience. He knows he must live one day at a time. But he is currently determined to achieve a lawful, productive life. If he stays focused, he does not pose a future threat to public safety. If he stays focused, a sentence not to exceed 120 months is more than adequate to achieve the sentencing goals set forth in §3553(a)(2).

**3. Avoiding disparity in the treatment of similarly situated offenders.**

There are three defendants, including Mr. Lowther, named in the current indictment.[7] The other two, Messrs. Clancy and Schoenfelder, were considered average participants. Mr. Lowther's advisory range is driven in large part by his criminal history score. But for his criminal history (and a two point increase for career criminal

---

[7] We anticipate that because of Mr. Lowther's assistance, soon there will be more.

10

status) Mr. Lowther's total offense level would be 34, with a corresponding guideline range of 151-188 months.

We recognize that under the guidelines, Mr. Lowther is stuck with his criminal history. We are also mindful, however, that Mr. Lowther has been correspondingly punished for each prior conviction. To increase his sentence some 80-100 months based exclusively on past crimes for which he has been previously punished seems to substantially over-represent the seriousness of Mr. Lowther's criminal history and the likelihood that he will commit future crimes.[8]

We are currently unaware what sentence Messrs. Clancy and Schoenfelder will receive. As a result, we ask the Court to use its considered judgment to fashion a sentence consistent with Mr. Lowther's role and conduct vis-à-vis the others involved, taking into account their actions and his individual circumstances to avoid any disparity in their treatment.

## CONCLUSION

For the reasons set forth above we respectfully request this Court to grant a downward variance from the sentencing guidelines to impose a sentence **not to exceed 120 months**. This sentence is sufficient, but not greater than necessary, to comply with the sentencing aims of §3553(a), which take into account the need to avoid sentence

---

[8] *See,* U.S.S.G. 4A1.3(b) allowing for a downward departure where the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.

11

disparity, the nature of the offense and Mr. Lowther's role in the offense, his history and characteristics, his remorse, cooperation, rehabilitation and his acceptance of responsibility.

Dated: February 19, 2014          Respectfully submitted,

MESHBESHER & SPENCE, LTD.

By: *s/ Daniel Guerrero*
    Daniel Guerrero, #206040
    1616 Park Avenue
    Minneapolis, MN 55404
    (612) 339-9121

ATTORNEYS FOR DEFENDANT